**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| KEVIN JACKSON, | : | **CIV. NO. 19-7651(RMB)** |
| Plaintiff | : | |
| v. | : | **OPINION** |
| DONALD J. TRUMP, President of the United States *et al.*, | : | |
| Defendants | : | |

**BUMB, DISTRICT JUDGE**

Plaintiff Kevin Jackson, a prisoner confined in South Woods State Prison in Bridgeton, New Jersey, brings this civil action under 42 U.S.C. § 1983 for "noncompliance with the United States Constitution, Article I, Sec. 7, Sec. 8 & Art. II …"[1] (Compl., ECF No. 1, ¶2.) Plaintiff filed an application to proceed *in forma*

---

[1] Article I, Section 7, Clause I of the U.S. Constitution provides, "All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills."

Article I, Section 8, Clause I of the U.S. Constitution states, "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States[.]"

Article II of the U.S. Constitution describes the powers of the President of the United States.

*pauperis* ("IFP") (ECF No. 1-4), which establishes his eligibility to proceed without prepayment of fees under 28 U.S.C. § 1915.

When a prisoner is permitted to proceed without prepayment of the filing fee or when the prisoner pays the filing fee for a civil action and seeks redress from a governmental entity, officer or employee of a governmental entity, 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) requires courts to review the complaint and *sua sponte* dismiss any claims that are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. For the reasons discussed below, the Court will dismiss the complaint without prejudice for lack of standing. See e.g. Blakeney v. Marsico, 340 F. App'x 778, 780 (3d Cir. 2009) (affirming district court *sua sponte* dismissal of claim for lack of Article III standing).

I. *Sua Sponte* Dismissal

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Id. (internal quotation marks omitted). "Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering

2

why the submission was filed, what the litigant is seeking, and what claims she may be making." See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If

3

a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

II. DISCUSSION

    A.    The Complaint

Plaintiff asserts jurisdiction under 42 U.S.C. § 1983. (Compl., ECF No. 1, ¶3.) He alleges the following facts in his Complaint against President Donald J. Trump and Attorney General William Bar.[2] President Trump issued an Emergency Declaration Proclamation ("The Declaration") on February 15, 2019. (Compl., ECF No. 1, ¶6.) The Declaration was manufactured in order to build a wall with funds "beyond what was already legally appropriated by Congress…." (Id., ¶7.) Attorney General William Barr "legally represents the interests of the United States and its citizens in the prosecution of all Federal Criminal and Civil Actions taken to the United States Supreme Court…." (Id., ¶8.)

Plaintiff presents the following claims. For Plaintiff's first claim, he contends:

> Defendant['s] submission of an order specifically signed [by] President Donald J. Trump as an Emergency Declaration Proclamation

---

[2] Plaintiff also included "John and Jane Doe" defendants for the purpose of reserving the right to add additional defendants at a later date. (Compl., ECF No. 1, ¶4.)

> on 2/15/19 to circumvent the United States
> Constitution Art. I, Sec. 1, Sec. 2, Duties of
> the Legislative Powers known as Congress, is
> unconstitutional in the specific manner it was
> done [and] triggered a grave fundamental
> constitutional violation of the Separation of
> Powers Doctrine.

(Id., First Claim (alterations added.))

Plaintiff states his second claim as follows:

> Plaintiff submit[s] that the Framers installed
> the U.S. Const. Art. III, where the Supremacy
> Clause of the United States Constitution
> offer[s] forbidden egregious constitutional
> manufacture stories to justify the usage of
> the executive authority power in such an
> abusive manner contrary to/and within the
> check[s] and balance[s] of the United States
> Constitution three branches of government[.]

(Compl., ECF No. 1, Second Claim (alterations added.))

Under the heading "Third Claim," Plaintiff asserts that he has standing to bring this action "as a United States Citizen" and under the Anti-SLAPP Law.[3] (Id., ¶17.) In his "Fourth Claim," Plaintiff asserts standing under the New Jersey Constitution,

---

3 "The New Jersey Legislature has not enacted Anti-SLAPP legislation." John C. Evans Project, Inc. v. Valley Nat. Bancorp, 2012 WL 1581148, at *6 (N.J. Super. Ct. App. Div. May 8, 2012) (per curiam). "SLAPP suits" are "lawsuits brought to discourage various activities associated with the exercise of the constitutional rights to free speech and to petition the government." Dena M. Richardson, Power Play: An Examination of Texas's Anti-SLAPP Statute and Its Protection of Free Speech Through Accelerated Dismissal, 45 St. Mary's L.J. 245, 246–47 (2014). Plaintiff has not established jurisdiction under an Anti-SLAPP law.

5

Article I, Sec. 2(A), (B) and Sec. 18. Plaintiff explained these assertions:

> Plaintiff having Federal Representatives in the Congress and Senate (Legislative Branch) pursuant to the United States Constitution Art. I, Sec. 1. This per se gives plaintiff standing because he [has] a State and Federal Constitutional vested legal interest in the various bills generated from the Congress that still effect plaintiff as a United States Citizen and precisely when bills are passed to become law revolving around criminal justice statutes/laws/sentencing laws, etc.

(Compl., ECF No. 1, ¶21.)

For relief, Plaintiff seeks a preliminary injunction against the Declaration, civil penalties against President Trump, money damages, and recovery of fees and costs for litigating this matter. (Id., ¶¶29-33.) Plaintiff also filed a Notice of Motion for Preliminary Injunction. (Notice of Mot., ECF No. 1-6.)

II. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) Here, the defendants are federal not state actors, and § 1983 is inapplicable. Plaintiff's claims potentially fall under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 402 U.S. 388 (1971), which created a

6

remedy for money damages against a federal agent for violating an individual's Fourth Amendment rights under the Constitution. See Iqbal, 556 U.S. at 675-76 ("In the limited settings where Bivens does apply, the implied cause of action is the "federal analog to suits brought against state officials under Rev. Stat. § 1979, 42 U.S.C. § 1983") (quotations omitted).

The Supreme Court, in Ziglar v. Abbasi, held that when a party seeks to assert an implied cause of action under the Constitution, courts must first determine whether "special factors counsel hesitation" in creating an implied cause of action beyond those already recognized by the Supreme Court. 127 S. Ct. 1843, 1857-58 (2017). Because Plaintiff lacks standing to bring his claims, the Court does not reach the special factors analysis under Abbasi.

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.'" Sprint Commc'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 273–74 (2008). Thus, a plaintiff must have Article III standing to seek judicial resolution of his/her claims. Id. at 274.

"[T]he plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the elements of Article III standing." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). "[A] plaintiff must adequately establish: (1) an injury in fact

(i.e., a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (*i.e.*, a 'fairly ... trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit). Sprint Commc'ns Co., L.P., 554 U.S. at 273-74 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561 (1992)).

An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and "actual or imminent, not conjectural or hypothetical." Spokeo, 136 S. Ct at 1548 (quoting Lujan, 504 U.S. at 560 (internal quotation marks omitted). A "particularized" injury is an injury personal to the plaintiff. Id. A concrete injury must actually exist, although it may intangible. Id. at 1549. "'[T]hreatened injury must be *certainly impending* to constitute injury in fact,' and … '[a]llegations of possible future injury' are not sufficient." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) (emphasis added, internal quotation marks omitted)).

Here, Plaintiff does not satisfy the "injury in fact" element of Article III standing because he has not suffered a concrete, particularized and imminent injury. The mere fact that Plaintiff

8

is a United States citizen and that he perceives a Separation of Powers violation does not establish a personal injury. Plaintiff alleges that he has an interest in laws passed by Congress, especially laws related to criminal justice, presumably because he is a state prisoner. Applying the most liberal construction of the Complaint, Plaintiff alleges a potential injury from the President's use of funds to build a border wall with funds that were appropriated by Congress for an expenditure that would benefit state prisoners. The Declaration does not permit such an expenditure.

The Declaration states:

> By the President of the United States of America
>
> A Proclamation
>
> The current situation at the southern border presents a border security and humanitarian crisis that threatens core national security interests and constitutes a national emergency. …
>
> NOW, THEREFORE, I, DONALD J. TRUMP, by the authority vested in me by the Constitution and the laws of the United States of America, including sections 201 and 301 of the National Emergencies Act (50 U.S.C. 1601 et seq.), hereby declare that a national emergency exists at the southern border of the United States, and that section 12302 of title 10, United States Code, is invoked and made available, according to its terms, to the Secretaries of the military departments concerned, subject to the direction of the

Secretary of Defense in the case of the Secretaries of the Army, Navy, and Air Force. To provide additional authority to the Department of Defense to support the Federal Government's response to the emergency at the southern border, I hereby declare that this emergency requires use of the Armed Forces and, in accordance with section 301 of the National Emergencies Act (50 U.S.C. 1631), that the construction authority provided in section 2808 of title 10, United States Code, is invoked and made available, according to its terms, to the Secretary of Defense and, at the discretion of the Secretary of Defense, to the Secretaries of the military departments. I hereby direct as follows:

Section 1. The Secretary of Defense, or the Secretary of each relevant military department, as appropriate and consistent with applicable law, shall order as many units or members of the Ready Reserve to active duty as the Secretary concerned, in the Secretary's discretion, determines to be appropriate to assist and support the activities of the Secretary of Homeland Security at the southern border.

Sec. 2. The Secretary of Defense, the Secretary of the Interior, the Secretary of Homeland Security, and, subject to the discretion of the Secretary of Defense, the Secretaries of the military departments, shall take all appropriate actions, consistent with applicable law, to use or support the use of the authorities herein invoked, including, if necessary, the transfer and acceptance of jurisdiction over border lands.

Sec. 3. This proclamation is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or

> entities, its officers, employees, or agents, or any other person.

Declaring a National Emergency Concerning the Southern Border of the United States, 84 FR 4949, 2019 WL 670633(Pres.)

The Declaration invokes 10 U.S.C. § 2808 for construction authority. Under 10 U.S.C. 2808:

> (a) In the event of a declaration of war or the declaration by the President of a national emergency in accordance with the National Emergencies Act (50 U.S.C. 1601 et seq.) that requires use of the armed forces, the Secretary of Defense, without regard to any other provision of law, may undertake military construction projects, and may authorize the Secretaries of the military departments to undertake military construction projects, not otherwise authorized by law that are necessary to support such use of the armed forces. Such projects may be undertaken only within the total amount of funds that have been appropriated for military construction, including funds appropriated for family housing, that have not been obligated.
>
> (b) When a decision is made to undertake military construction projects authorized by this section, the Secretary of Defense shall notify, in an electronic medium pursuant to section 480 of this title, the appropriate committees of Congress of the decision and of the estimated cost of the construction projects, including the cost of any real estate action pertaining to those construction projects.
>
> (c) The authority described in subsection (a) shall terminate with respect to any war or national emergency at the end of the war or national emergency.

Thus, funding for the Declaration is limited to "the total amount of funds that have been appropriated for military construction." Plaintiff, a state prisoner, does not suffer an injury in fact from the Declaration.

III. CONCLUSION

For the reasons stated above, the Court will dismiss the Complaint with prejudice for lack of standing.

An appropriate order follows.

DATE: April 30, 2019

                                        s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **United States District Judge**